IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FREESCALE SEMICONDUCTOR, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:13-cv-00075 |
| | § | |
| MAXIM INTEGRATED PRODUCTS, INC. | § | |
| and TANJU YURTSEVER | § | |
| | § | |
| Defendants. | § | |
| | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Freescale Semiconductor, Inc. files its Original Complaint against Maxim Integrated Products, Inc. and Tanju Yurtsever ("Defendants") and in support thereof would respectfully show as follows:

### PARTIES

1.     Plaintiff Freescale Semiconductor, Inc. is a Delaware corporation with its principal place of business in Austin, Texas.

2.     Defendant Maxim Integrated Products, Inc. ("Maxim") is a Delaware corporation with its principal place of business at 160 Rio Robles, San Jose, CA 95134.  It may be served thought its registered agent for process, CSC-Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

3.     Defendant Tanju Yurtsever is an individual residing at 14900 Spillman Ranch Loop, Austin, Texas 78738.

## JURISDICTION AND VENUE

4.     This is a civil action seeking injunctive relief and damages for copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*, and for misappropriation of trade secrets and theft under Texas law.

5.     The Court has exclusive subject matter jurisdiction over the copyright claims pursuant to 28 U.S.C. §§ 1331 and 1338(a), and it has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367(a).

6.     Defendants have ongoing and systematic contacts within the State of Texas and within this District.  Defendant Maxim ships, distributes, offers for sale, sells, and/or advertises its products in the United States, the State of Texas, and the Western District of Texas. Defendant Maxim maintains a sales office, design center and wafer fab within the Western District, and the software at issue in this lawsuit was stolen, copied and put into use by Maxim within the District.  Defendants committed the tort of copyright infringement within the State of Texas, and, more particularly, within the Western District of Texas.  Defendant also intentionally directed tortious activities toward and caused tortious injury within the state of Texas, and, more particularly, within the Western District of Texas.  Defendant Yurtsever resides and works within the Western District of Texas. Therefore, this Court has personal jurisdiction over Defendants.

7.     Venue is proper in the Western District of Texas pursuant to 28 U.S.C. §§ 1391 and 1400(a).

## U.S. COPYRIGHT REGISTRATIONS

8.     The United States Copyright Office has duly and legally issued the following

United States Copyright Registrations:

      a.      No. TXu001828670 for the Factory Scheduling Tool ("FaST") software program;

      b.      No. TXu001828701for the Flowview software program;

      c.      TXu001828696 for the Graphical Manufacturing Monitoring Systems ("GraMMs") software program;

      d.      TXu001828704 for the Java Graphical Manufacturing Monitoring Systems ("JGraMMs") software program;

      e.      TXu001828679 for the OpStation software program; and

      f.      TXu001828658 for the Simulot software program.

The software programs listed above in (a) through (f) are hereafter referred to as "Freescale's Software."

      9.      Freescale is the sole owner of all right, title and interest in and to its Software and possesses all rights of recovery under the copyright registrations, including the right to recover damages for past, present and future infringements.  Each of these registrations is valid and enforceable.

## GENERAL ALLEGATIONS

      10.      Plaintiff Freescale is a global leader in semiconductor products for the automotive, consumer, industrial, and networking markets.  Freescale has design, research and development, manufacturing, and sales operations in more than 20 countries around the world, but it is headquartered in Austin, Texas.  Freescale's Ed Bluestein site in Austin is home to both manufacturing and research and development facilities.

      11.      Manufacturing semiconductor products is a high tech, complicated process.

Semiconductor manufacturing begins with a round piece of silicon known as a "wafer," which is ultimately cut into individual "die." Each factory makes many different types of semiconductor technologies and the type of die that is made from a particular wafer depends on the types and number of manufacturing steps applied to the wafer. There are five basic steps in the manufacturing process: diffusion, photo, etch, films and chemical mechanical polish (CMP). Depending on the technology at issue, a wafer can go through these steps many different times, and in varying order, before the manufacturing process is complete. Because the same manufacturing tools are used to manufacture multiple technologies, scheduling is a key part of plant efficiency, productivity and profitability.

12.     Freescale is the owner of various software programs relating to semiconductor manufacturing. These programs were developed at great cost over many years to streamline and improve the manufacturing process, thereby increasing the output and profitability of its factories. Freescale's Software includes programs known as FaST, Flowview, GraMMS, JGraMMs, OpStation and Simulot. These programs are used at various Freescale facilities, including the Ed Bluestein plant. Freescale's Software is a valuable asset that provides it a competitive advantage in its operations.

13.     Defendant Yurtsever began working at Freescale's Ed Bluestein plant on July 27, 1992, when it was owned by Freescale's predecessor-in-interest, Motorola. Over the years, Tanju made technical contributions to many different programs, including adding new features to JGraMMs, modifying diffusion scheduling applications and supporting Simulot, developing code relating to scheduling, making "continuous improvements to the process as appropriate to improve efficiency and/or overall process" and working on "all integration components." Yurtsever anticipated his programming contributions for 2006 alone would bring $10.7M in

benefit to Freescale's manufacturing operations.   Tanju was commended for his deep "understanding of [Freescale's] systems," which gave him "an edge."

14.     In 2007, Yurtsever was the primary employee working to develop the FaST program.  As he explained it, FaST was "the start of a new chapter for [Freescale] manufacturing where we can gain competitive advantage against our competitors."  The importance of this new program was due to the fact the "fab scheduling area is not fully explo[it]ed either by academia or by software vendors."  In 2008, Yurtsever focused on diffusion scheduling for Freescale's Ed Bluestein plant.  He acknowledged that this project was an "internal Trade Secret."  By the end of the year, Yurtsever described the business results of these proprietary programs as "stellar," with significant production increases shortly after implementation.  Yurtsever soon created a roadmap for deploying the diffusion scheduling programs to other Freescale facilities and turned his focus to implant and Photo scheduling.

15.     Yurtsever terminated his employment with Freescale on September 27, 2010. During his exit interview, Yurtsever was reminded that during his employment, he had been given access to Freescale's proprietary and confidential information, including but not limited to computer programs concerning "Dispatching and Scheduling," "real-time monitoring of equipment, wip [work in process], etc." and software "integration and data access."  He was told that assignments from his new employer, if he were performing similar activities, by the very nature of the assignment could result in the disclosure of Freescale's confidential information. Accordingly, Yurtsever was asked to inform his new employer of this possibility and to "request that safeguards be established to ensure against disclosure of Freescale confidential and/or proprietary information."  He was also informed that Freescale would object to him performing the same activities that he performed at Freescale to the extent the activities necessarily involved

disclosure of Freescale confidential and/or proprietary information.

16.     Upon exit, Yurtsever was asked to collect all Freescale property and confidential and/or proprietary information, whether existing at Freescale or non-Freescale locations, and to return them.   He acknowledged his obligation to collect and return any such property or information and represented that he had done so.   Yurtsever left his employment with Freescale in order to begin work with Defendant Maxim, another semiconductor manufacturer.

17.     Two years later, in 2012, Freescale received information that its Software had been taken from Freescale and was being used at Maxim Integrated Products and that many presentations shown at Maxim had Freescale logos and confidential markings.   Yurtsever was specifically identified as being involved in the scheme, as well as two other former Freescale employees, Ying Chang and Jennifer Johns.   Also identified were the types of programs at issue, including Simulot, the Diffusion programs discussed above, and many more.

18.     Upon information and belief, Defendants have misappropriated Freescale's proprietary and confidential Software and illegally copied and/or created derivative works of it in order to utilize it for Maxim's operations, increasing its efficiency, productivity and profits. These actions constitute unlawful misappropriation of trade secrets as well as copyright infringement.   Freescale is suffering, and will continue to suffer, immediate irreparable harm unless and until Defendants cease their illegal conduct.

## COUNT ONE:  COPYRIGHT INFRINGEMENT

19.     Freescale hereby incorporates paragraphs 1 to 18 as if set forth fully and at length.

20.     The Freescale Software is original, copyrightable subject matter under the laws of

the United States.  Freescale owns the exclusive rights and privileges in and to those copyrights. It has complied in all material respects with the Copyright Act, 17 U.S.C. §§ 101, *et seq.*, and all other laws governing copyrights.

21.     Upon information and belief, Defendants have infringed the copyrights described above by, among other things, reproducing, modifying, altering, publishing, displaying, selling, marketing, and/or otherwise using software products that are copies of, substantially similar to, or derived from, the original, protectable elements of the Freescale Software, without Freescale's consent.  Defendants' infringement of the copyrights was and is knowing, intentional, deliberate, and willful.  Defendants had access to the Software through Defendant Yurtsever's employment at Freescale and they will engage in further acts of copyright infringement unless enjoined by this Court.

22.     Pursuant to 17 U.S.C. § 502, Freescale is entitled to and hereby seeks temporary and final injunctive relief.  Freescale has been and continues to be irreparably harmed by, and has no adequate remedy at law for, Defendants' copyright infringement in that, among other things: (i) the copyrights constitute unique and valuable property, injury to which cannot adequately be compensated by monetary damages; (ii) the damages to Freescale resulting from Defendants' conduct are not precisely and fully ascertainable; (iii) Defendants' infringing acts injure and threaten to continue to injure Freescale's reputation and good will; and (iv) the damages resulting to Freescale from Defendants' wrongful conduct and the conduct itself are continuing, and Freescale would be required to bring a multiplicity of suits to achieve compensation for the injuries caused thereby.

23.     Unless restrained, Defendants' copyright infringement will continue to cause

irreparable injury to Freescale, both during the pendency of this action and thereafter.  Freescale seeks an order from this Court preliminarily and permanently enjoining Defendants, their agents, affiliates, officers, employees, and all others acting in concert with them from directly or indirectly infringing Freescale's copyrights in any manner, including by reproducing, modifying, altering, publishing, displaying, selling, using, marketing, or otherwise disposing of any tangible item that is identical to, substantially similar to, or derived from, the copyrights, including without limitation the Freescale Software.

24.     Pursuant to 17 U.S.C. § 503, Freescale is entitled to and hereby seeks an order impounding all copies of the Freescale Software and any infringing work (including without limitation any Maxim software derived from the Freescale Software) that is in the possession, custody or control of Defendants or, as a result of Defendants' actions, Defendants' agents, affiliates, contractors (such as foundries), distributors or customers.  Freescale further seeks an order impounding all computers, servers, and storage devices (including without limitation flash drives and external hard drives) in Defendants' possession, custody or control which contain such infringing materials.  Upon final judgment or decree, Freescale seeks an order requiring the collection and destruction of all copies of the Freescale Software and any infringing work (including without limitation any Maxim software derived from the Freescale Software) in the possession, custody or control of Defendants or, as a result of Defendants' actions, Defendants' agents, affiliates, contractors (such as foundries), distributors or customers.

25.     Pursuant to 17 U.S.C. §§ 504 and 505, Freescale is entitled to and hereby seeks from Defendants its actual damages, including attorneys' fees and full costs, that it has sustained and will sustain, and any gains, profits, and advantages obtained by Defendants as a result of their acts of infringement as alleged above.

## COUNT TWO:  MISAPPROPRIATION OF TRADE SECRETS

26.     Freescale hereby incorporates paragraphs 1 to 25 as if set forth fully and at length.

27.     Freescale developed and possessed trade secrets in the form of intellectual property rights in its technology and software products relating to the manufacturing of semiconductor products, including but not limited to the Freescale Software, all software design materials relating to the Freescale Software, all computer files relating thereto, all documents and records relating to the Freescale Software (including PowerPoint presentations), the implementation of the Freescale Software, and the overall body of experience and know-how developing the Freescale Software (hereafter "Freescale's Trade Secrets").

28.     Freescale's Trade Secrets were kept secret by Freescale, which engaged in reasonable efforts to maintain the secrecy of this information, including disclosing it to certain Freescale employees only on a limited access, as-needed basis, and subject to password protection and confidentiality.

29.     Freescale's Trade Secrets derive actual and potential economic value from not being generally known to the public or readily ascertainable by persons who could obtain economic value from its disclosure or use.

30.     Defendant Yurtsever had a confidential relationship with Freescale which gave rise to certain fiduciary obligations.  Defendants had access to Freescale's Trade Secrets and knew or should have known that Freescale required the information be kept secret and engaged in reasonable efforts to maintain its secrecy.  Defendants used or disclosed the Trade Secrets either (1) in breach of a confidential or contractual relationship with Freescale, (2) after acquiring the Trade Secrets by improper means, or (3) after acquiring the Trade Secrets with

notice that the disclosure was improper.  Defendants owed Freescale an obligation not to use or disclose Freescale's Trade Secrets for any purpose other than for Freescale's benefit.

31.     Defendants have misappropriated Freescale's Trade Secrets by, among other things, improperly disclosing them to third parties; disclosing and/or using them without express or implied consent or authority from Freescale; disclosing and/or using them in violation of a confidential or contractual relationship with Freescale; and/or disclosing and/or using them for the benefit of Defendants and to the competitive disadvantage of Freescale.

32.     Freescale has suffered, and will continue to suffer, immediate and irreparable harm from Defendants' wrongful misappropriation of Freescale's Trade Secrets.

33.     Freescale is entitled to preliminary and permanent injunctive relief protecting Freescale's Trade Secrets by enjoining Defendants, their agents, affiliates, employees, and all others acting in concert with them from disclosing, using, or otherwise exploiting Freescale's Trade Secrets; and requiring Defendants, their agents, affiliates, officers, employees, and all others acting in concert with them to return to Freescale all materials that contain Freescale's Trade Secrets.

34.     Freescale has suffered damages as a direct and proximate result of Defendants' misappropriation of Freescale's Trade Secrets in an amount not yet ascertained to be proven at trial.

35.     Defendants have wrongfully obtained profits as a result of their misappropriation of Freescale's Trade Secrets in an amount not yet ascertained to be proven at trial.

36.     Defendants' conduct was and is wrongful, malicious, oppressive, fraudulent, and

in conscious disregard of the rights of Freescale. Accordingly, punitive and exemplary damages should be awarded.

## REQUEST FOR A JURY TRIAL

37.     Freescale requests a jury trial of all issues in this action so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Freescale prays for judgment and relief against Defendants as follows:

A.     a judgment that Defendants intentionally, knowingly, deliberately and/or willfully infringed and/or induced infringement of one or more of Freescale's copyrights;

B.     an order impounding all copies of the Freescale Software and any infringing work (including without limitation any derivative work) that is in the possession, custody or control of Defendants or, as a result of Defendants' actions, its agents, affiliates, contractors, distributors or customers;

C.     an order impounding all computers, servers, and storage devices (including without limitation flash drives and external hard drives) in Defendants' possession, custody or control which contain the Freescale Software, Freescale Manuals or any infringing work (including without limitation the Prism Software);

D.     a preliminary and permanent injunction restraining Defendants and their respective officers, employees, agents, subsidiaries, affiliates and all others acting in concert or participation with them from 1) directly or indirectly infringing Freescale's copyrights in any manner, including by reproducing, modifying, altering, publishing, displaying, selling,

marketing, or otherwise disposing of any tangible item substantially similar to, or derived from, Freescale's copyrights (including without limitation any Maxim software derived from the Freescale Software); and 2) directly or indirectly reproducing, modifying, altering, publishing, displaying, selling, marketing, or otherwise disposing of Freescale's trade secrets and requiring the return of all materials that contain Freescale's trade secrets.

E.      an order requiring the collection and destruction of all copies of the Freescale Software and any infringing work (including without limitation any Maxim software derived from the Freescale Software) in the possession, custody or control of Defendants or, as a result of Defendants' actions, Defendants' agents, affiliates, contractors (such as foundries), resellers, distributors or customers;

F.      actual damages, including all value gained by Defendants from use of the Software and Trade Secrets, through verdict and post-verdict until Defendants are enjoined from further infringing and/or misappropriating activities;

G.      an accounting of damages through verdict and post-verdict until Defendants are enjoined from further infringing and/or misappropriating activities;

H.      punitive and exemplary damages;

I.      an order (1) declaring Freescale the owner of, and for a constructive trust to be imposed on, all profits obtained as a result of Defendants' unlawful acts, any assets or properties acquired with such profits, and any income earned by or on account of such assets; and (2) compelling Defendants to convey to Freescale such profits, any assets acquired with such profits, and any income earned by or on account of such assets;

J.      all pre-judgment and post-judgment interest allowed by law, including an

award of post-judgment interest, pursuant to 28 U.S.C. § 1961, continuing until such judgment is

paid, at the maximum rate allowed by law;

K.      attorneys' fees according to law;

L.      costs of suit; and

M.      such other and further relief as may be deemed just and proper.

Dated:  January 28, 2013                           Respectfully submitted,

                                                   **FULBRIGHT & JAWORSKI L.L.P.**

                                                   ___/s/ Adam T. Schramek_____
                                                     Adam T. Schramek
                                                     State Bar No. 24033045
                                                     Stephen Calhoun
                                                     State Bar No. 24069457
                                                   98 San Jacinto Boulevard, Suite 1100
                                                   Austin, Texas 78701-4255
                                                   Telephone:  (512) 474-5201
                                                   Facsimile:  (512) 536-4598

                                                   **COUNSEL FOR PLAINTIFF**
                                                   **FREESCALE SEMICONDUCTOR,**
                                                   **INC.**